TITAN INSURANCE COMPANY v HYTEN

Docket No. 291899. Submitted August 5, 2010, at Detroit. Decided
    February 1, 2011, at 9:10 a.m.

Titan Insurance Company filed an action in the Oakland Circuit Court
    against McKinley Hyten, Howard Holmes, and Martha Holmes,
    seeking a declaratory judgment allowing it to reform an automobile
    no-fault insurance policy it had issued to Hyten in August 2007 by
    reducing the liability coverage limits to the statutory minimums. The
    policy included liability limits in excess of the statutory minimums.
    At the time Titan issued the policy, Hyten's driver's license had been
    suspended, but she expected to get it back soon and did not indicate
    on the application that her license was suspended. In September
    2007, her license was restored. The following February, she had a
    motor vehicle accident in which the Holmeses were injured. Titan
    alleged that had it been informed that Hyten had a suspended license,
    it would not have issued the policy. Farm Bureau Insurance, the
    Holmeses' insurer, was allowed to intervene in the action. Farm
    Bureau, Titan, and Hyten filed cross-motions for summary disposi-
    tion. The court, Edward Sosnick, J., denied Titan's motion and
    granted summary disposition to Hyten and Farm Bureau, concluding
    that the evidence did not clearly show fraud and that Titan could
    have easily ascertained whether Hyten had a valid driver's license.
    Titan appealed.

The Court of Appeals *held*:

1. MCL 257.520(f)(1) prohibits an insurer from using fraud as a
    basis to void completely coverage under an insurance policy once an
    innocent third party has been injured, but in light of the provisions of
    MCL 257.520(g), an insurer may use fraud as a defense to void
    optional insurance coverage in excess of the statutory minimum
    amounts. An insurer may not deny coverage on the basis of fraud
    after it has collected premiums, however, when it easily could have
    ascertained the fraud at the time the contract was formed. The
    insurer must undertake a reasonable investigation of the insured's
    insurability within a reasonable time from the acceptance of the
    application and the issuance of a policy, a duty that directly inures to
    the benefit of third persons injured by the insured, such as the
    Holmeses. Titan's agent could have easily ascertained whether Hyten
    had a license. Because the coverage implicated was for the benefit of

innocent third parties, Titan could not reform Hyten's policy to reduce the residual coverage to the statutory minimum limits. The trial court did not err by granting Hyten and Farm Bureau judgment as a matter of law.

2. Moreover, MCL 500.3220 permits an insurer to cancel a no-fault policy if the risk is unacceptable to the insurer, but only within 55 days of the policy's issuance. If the insurer opted against undertaking an investigation of the risk it was insuring within that time, it may not use later-acquired information to terminate its policy obligations except under very limited circumstances. Titan's reliance on Hyten's representations could not qualify as reasonable in light of the public policy expressed in the no-fault act and MCL 500.3220.

3. Hyten's prior innocent misrepresentation lost its effectiveness as a potential ground for cancelling the policy once she received her license. In the absence of evidence that Titan would not have insured Hyten after she obtained her license, her change of circumstances cured the misrepresentation and Titan had no equitable basis for recession or reformation.

4. Farm Bureau had standing to challenge Titan's attempt to reform the policy because as the Holmeses' insurer, its rights might have been affected if it had to cover the costs of their injuries.

Affirmed.

ZAHRA, J., did not participate.

1. INSURANCE — NO-FAULT — MISREPRESENTATION BY APPLICANT — REFORMATION OF POLICY — EASILY ASCERTAINABLE MISREPRESENTATION.

An insurer may not use fraud as a basis to void completely coverage under an insurance policy once an innocent third party has been injured, but an insurer may use fraud as a defense to void optional insurance coverage in excess of the statutory minimum amounts; an insurer may not deny coverage on the basis of fraud after it has collected premiums, however, when it easily could have ascertained the fraud at the time the contract was formed (MCL 257.520[f][1], [g]).

2. INSURANCE — NO-FAULT — MISREPRESENTATION BY APPLICANT — EASILY ASCERTAINABLE MISREPRESENTATION — FAILURE TO REASONABLY INVESTIGATE — ESTOPPEL.

An insurer may cancel a no-fault policy if the risk is unacceptable to the insurer, but only within 55 days of the policy's issuance; if the insurer opts against undertaking an investigation of the risk it is insuring within that time, it may not use later-acquired information to terminate its policy obligations except under very limited circumstances (MCL 500.3220).

*Law Offices of Ronald M. Sangster, PLLC* (by *Ronald M. Sangster*), for Titan Insurance Co.

*William E. Ziem* for McKinley Hyten.

*Kopka, Pinkus, Dolin & Eads, P.L.C.* (by *Mark L. Dolin*), for Farm Bureau Insurance.

Before: GLEICHER, P.J., and ZAHRA and K. F. KELLY, JJ.

GLEICHER, P.J. In an insurance application submitted to plaintiff, Titan Insurance Company, on August 24, 2007, defendant McKinley Hyten represented that she possessed a valid driver's license as of that date. In reality, Hyten's license had been suspended and was not restored until nearly a month later, on September 20, 2007. In February 2008, Hyten was involved in an automobile accident in which defendants Martha Holmes and Howard Holmes suffered injuries. On the basis of Hyten's misrepresentation that she held a license on August 24, 2007, Titan sought to reform Hyten's policy by reducing to the statutory minimum the excess liability coverage available to the Holmeses. The circuit court denied Titan this equitable remedy on the ground that Titan could have easily ascertained Hyten's misrepresentation of her licensing date. We affirm the circuit court's order denying Titan's motion for summary disposition and granting summary disposition in favor of Hyten and intervening defendant Farm Bureau Insurance.

I. UNDERLYING FACTS AND PROCEEDINGS

Hyten obtained a provisional driver's license in April 2004. Over the next 2½ years, she incurred multiple moving violations and had two minor traffic accidents. On January 6, 2007, the Secretary of State suspended

Hyten's driver's license. Meanwhile, Hyten's mother, Anne Johnson, inherited a 1997 Dodge Stratus. Johnson "earmarked" the vehicle for Hyten's use after the suspension was lifted. Based on assurances from Hyten's probation officer, Johnson anticipated that Hyten's license would be restored at a scheduled court date of August 24, 2007.

On August 22, 2007, in preparation for Hyten's license restoration, Johnson spoke by telephone with an insurance agent, Brett Patrick.[1] Patrick filled out a Titan Insurance Michigan automobile insurance application on Hyten's behalf. Johnson informed Patrick that Hyten's driver's license was suspended, and Patrick responded that Hyten could not be insured until her driving privileges had been reinstated. Johnson advised Patrick that Hyten's license would likely be reinstated on August 24, 2007. Patrick postdated the application to August 24, 2007. The application did not identify that any of the drivers in Hyten's household were unlicensed or had their licenses suspended or revoked as of that date. Johnson paid $719 for the Titan insurance premium by credit card over the telephone. The same day or the next day, Hyten signed the application at Patrick's office, after "skim[ming] over" its contents to confirm the accuracy of the make and model of her car.[2] The Titan policy took effect on August 24, 2007, with coverage limits of $100,000 per person and $300,000 per occurrence.

---

[1] Although somewhat unclear from the record, Patrick was an independent insurance agent who had authority to issue Titan insurance policies to qualifying customers.

[2] Hyten did not identify exactly when she signed the insurance application, but averred that she went to Patrick's office a day or two before her hearing on August 24, 2007. Hyten dated her signature on the application August 22, 2007.

Hyten and Johnson appeared in court on August 24, 2007, where they learned that Hyten would not regain her driving privileges until she completed a driver's assessment. The Stratus stayed in storage until September 20, 2007, when the court restored Hyten's license. Neither Hyten nor Johnson notified Patrick that Hyten's license remained suspended on August 24, 2007. Johnson averred in an affidavit, "I fully expected the car to remain insured while it was stored and that, upon my daughter receiving her license to drive, the insurance policy would be in effect." On February 10, 2008, approximately five months after the reinstatement of Hyten's license, Hyten had a motor vehicle accident involving the Holmeses. The Holmeses both sustained injuries in the accident.

Titan filed a complaint in the Oakland Circuit Court seeking a declaration reforming Hyten's insurance policy by reducing the liability coverage limits to the statutory minimum of $20,000 per person and $40,000 per event.[3] Titan's complaint asserted that had Titan "been informed of the fact that Defendant Hyten's Michigan driver's license had been suspended, it never would have accepted the risk and would not have issued the subject insurance policy, unless Defendant Hyten had named himself [sic] as an excluded driver under MCL 500.3009." Farm Bureau, the insurance company for the Holmeses, intervened as a defendant in the

---

[3] The no-fault insurance act, MCL 500.3101 *et seq.*, sets forth the amount of residual liability coverage required in Michigan no-fault automobile insurance policies. MCL 500.3131. MCL 500.3009(1) mandates that no-fault policies include coverage for "loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle" of "not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and to a limit of not less than $10,000.00 because of injury to or destruction of property of others in any accident."

action. Farm Bureau, Titan, and Hyten filed cross-motions for summary disposition under MCR 2.116(C)(10). In a written opinion and order, the circuit court denied Titan's motion and granted Farm Bureau's and Hyten's motions. The circuit court's opinion set forth the following pertinent factual findings:

> In this case, it is not clear that defendant McKinley Hyten knowingly committed any fraud. Indeed, the evidence does not even show that McKinley's mother [Johnson] committed any fraud. The evidence does not show what information the insurance agent received. However, whether a person has a driver's license is easily ascertained. There is no evidence before the Court as to whether the insurance agent asked to see McKinley's license or whether he may have taken her premium knowing that she did not have a license. For all of these reasons, the Court cannot conclude that the plaintiff has a right to reduce the coverage to the statutory minimums.

## II. GOVERNING CASELAW

Titan challenges the circuit court's summary disposition ruling, which we review de novo. *Robertson v Blue Water Oil Co*, 268 Mich App 588, 592; 708 NW2d 749 (2005). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the

opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

The parties' dispute centers on whether Titan may reform Hyten's no-fault insurance policy by reducing the tort liability coverage available to the Holmeses from the stated policy limits of $100,000 per person and $300,000 per occurrence to the statutory minimums of $20,000 per person and $40,000 per occurrence. Titan argues that reformation is appropriate because Hyten fraudulently misrepresented that she possessed a driver's license on August 24, 2007.

The issue presented here lies within the intersection of three insurance concepts: policy cancellation, rescission, and reformation. Cancellation and rescission signify different methods for terminating insurance coverage.

> Rescission is a remedy distinct from cancellation. See 8B Appleman, Insurance Law and Practice, § 5011, p 403:
>
> > "When a policy is cancelled, it is terminated as of the cancellation date and is effective up to such date; however, when a policy is rescinded, it is considered void ab initio and is considered never to have existed." [*United Security Ins Co v Ins Comm'r*, 133 Mich App 38, 42; 348 NW2d 34 (1984).]

In contrast, a policy in full effect may be reformed. "Reformation of an insurance policy is an equitable remedy." *Auto-Owners Ins Co v Elchuk*, 103 Mich App 542, 545; 303 NW2d 35 (1981). In *Najor v Wayne Nat'l Life Ins Co*, 23 Mich App 260, 272; 178 NW2d 504 (1970), this Court adopted the following description of reformation:

> "A written instrument may be reformed where it fails to express the intentions of the parties thereto as the result of accident, inadvertence, mistake, fraud, or inequitable conduct, or both fraud and mistake, fraud or inequitable conduct being on one side and mistake on the other.

Conversely, in the absence of satisfactory proof of accident, fraud, or mistake, there is no basis for a court of equity to reform an instrument." 45 Am Jur, Reformation of Instruments, § 45, p 609.

Bearing in mind these basic concepts, we turn to the law governing Titan's ability to cancel, rescind, or reform Hyten's insurance policy under the circumstances presented.

Where a policy of insurance is procured through the insured's intentional misrepresentation of a material fact in the application for insurance, and the person seeking to collect the no-fault benefits is the same person who procured the policy of insurance through fraud, an insurer may rescind an insurance policy and declare it void *ab initio*. [*Darnell v Auto-Owners Ins Co*, 142 Mich App 1, 9; 369 NW2d 243 (1985).]

However, the right to completely rescind a policy of no-fault insurance "ceases to exist once there is a claim involving an innocent third party." *Farmers Ins Exch v Anderson*, 206 Mich App 214, 218; 520 NW2d 686 (1994).[4] Once an insurable event occurs, "the liability of the insurer with respect to insurance required by the no-fault act becomes *absolute*." *Ohio Farmers Ins Co v Michigan Mut Ins Co*, 179 Mich App 355, 363; 445 NW2d 228 (1989).

In *Ohio Farmers*, 179 Mich App at 358, this Court addressed whether an insured's misrepresentation au-

---

[4] Public policy forms the basis for this rule in Michigan. *Katinsky v Auto Club Ins Ass'n*, 201 Mich App 167, 171; 505 NW2d 895 (1993). "Generally, an automobile insurer cannot, on the ground of fraud or misrepresentation, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party." 7 Am Jur 2d, Automobile Insurance, § 61, p 566. MCL 257.520(f)(1) also commands that "with respect to the insurance required by this chapter," an insurer's liability "shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs."

thorized an insurance company to reform the policy by limiting its liability to the statutory minimum excess coverage. *Ohio Farmers* arose from a claim made by an innocent third party injured in an accident with a vehicle insured by the plaintiff, Ohio Farmers Insurance Company. *Id.* at 357-358. After the accident, Ohio Farmers declared the policy void because it had been secured through misrepresentations. *Id.* at 357. In an unpublished opinion, this Court held that "as to . . . the injured innocent third party, Ohio Farmers insured the subject vehicle on the date of the accident." *Id.* at 358. The case returned to this Court after Ohio Farmers settled with the injured third party by paying him $50,300. *Id.* Ohio Farmers then sued the driver's insurer, Michigan Mutual Insurance Company, asserting that "if an insurer is forced for public policy reasons to afford coverage in situations where the policy could have been rescinded, the bodily injury liability limit should be $20,000, the minimum mandatory limit." *Id.* This Court disagreed, concluding "that basic public policy considerations require that, once an innocent third party is injured in an accident in which coverage is in effect on the automobile, an insurer will be estopped from asserting rescission as a basis upon which it may limit its liability to the statutory minimum." *Id.* at 364-365.[5]

In *Farmers Ins Exch*, 206 Mich App at 220, this Court announced that it "decline[d] to follow" *Ohio Farmers*, because that case neglected to take into account two portions of the financial responsibility act (FRA), MCL 257.501 *et seq.* MCL 257.520(f) states:

> Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

---

[5] Although this Court stated that "an insurer will be estopped from asserting rescission as a basis" for limiting its liability, the insurance company actually sought to *reform* the policy to reflect lower coverage limits. *Ohio Farmers*, 179 Mich App at 358.

(1) The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy, and except as hereinafter provided, no fraud, misrepresentation, assumption of liability or other act of the insured in obtaining or retaining such policy, or in adjusting a claim under such policy, and no failure of the insured to give any notice, forward any paper or otherwise cooperate with the insurance carrier, shall constitute a defense as against such judgment creditor.

MCL 257.520(g) contemplates:

Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

The first of the two provisions, MCL 257.520(f)(1), "prohibits an insurer from using fraud as a basis to void completely coverage under an insurance policy once an innocent third party has been injured." *Farmers Ins Exch*, 206 Mich App at 218. However, this provision deals only with "the statutorily mandated minimum coverage of $20,000/$40,000."[6] *Id.* at 218. "By contrast,

---

[6] The FRA contains the same minimum residual liability coverage limits as those in the no-fault act. The FRA mandates that all "motor vehicle liability polic[ies]" supply minimum coverage of $20,000 for injuries suffered by one person in an accident and $40,000 for injuries suffered by two or more people in an accident. MCL 257.520(a) and (b)(2).

[MCL 257.520(g)], which addresses excess coverage, does not include such a limitation." *Id.* Reading the two provisions together, this Court reasoned that "the Legislature did not intend to preclude an insurer from using fraud as a defense to void *optional* insurance coverage."[7] *Id.* at 219 (emphasis added). The Court further explained, "[B]y specifically exempting the excess or additional coverage permitted by [MCL 257.520(g)] from the remaining provisions of the chapter," the Legislature signaled that insurers remained free to rely on fraud as a defense to an excess coverage claim. *Id.*

After concluding that MCL 257.520(f)(1) and (g) generally permit insurers to interpose a fraud defense to claims for excess coverage, the Court in *Farmers Ins Exch* carved out a notable exception: "We think it unwise to permit an insurer to deny coverage on the basis of fraud after it has collected premiums, when it easily could have ascertained the fraud at the time the contract was formed . . . ." *Id.* at 219. Thus, a "validly imposed defense of fraud" will not "absolutely void any optional excess insurance coverage in all cases." *Id.* Rather, "when fraud is used as a defense in situations such as these, the critical issue necessarily becomes whether the fraud could have been ascertained easily by the insurer at the time the contract of insurance was entered into." *Id.*

In *Farmers Ins Exch*, this Court cited no authority for the proposition that an easily ascertainable fraud cannot support a denial of optional residual liability coverage for an innocent third party. See *id.* A case decided almost two decades earlier, *State Farm Mut*

---

[7] Optional coverage means "any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy." MCL 257.520(g).

*Auto Ins Co v Kurylowicz*, 67 Mich App 568; 242 NW2d 530 (1976), had reached the same result. In *Kurylowicz*, this Court held, " '[A]n automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy. This duty directly inures to the benefit of third persons injured by the insured.' " *Id.* at 576, quoting *Barrera v State Farm Mut Auto Ins Co*, 71 Cal 2d 659, 663; 79 Cal Rptr 106; 456 P2d 674 (1969). This Court explained as follows the rationale for this rule: " 'Such an injured (innocent third) party, who has obtained an unsatisfied judgment against the insured, may properly proceed against the insurer; *the insurer cannot then successfully defend upon the ground of its own failure reasonably to investigate the application.*' " *Kurylowicz*, 67 Mich App at 576, quoting *Barrera*, 71 Cal 2d at 663 (emphasis added).

The circuit court found that Titan's agent could have easily ascertained whether Hyten had a license: for example, by asking to see her driver's license. Titan has offered no evidence or argument to the contrary. Titan instead insists that more recent caselaw directly conflicts with *Farmers Ins Exch*, *Ohio Farmers*, and *Kurylowicz*. In the first case cited by Titan, *Hammoud v Metro Prop & Cas Ins Co*, 222 Mich App 485, 487; 563 NW2d 716 (1997), the plaintiff sought no-fault benefits from the defendant insurance company for injuries suffered in a motor vehicle accident that occurred while the plaintiff was driving his vehicle. The plaintiff's brother had purchased insurance from the defendant for the plaintiff's vehicle, but failed to list the plaintiff as a driver in the insurance application. *Id.* The plaintiff admitted that to save money, he allowed his brother to buy the insurance by misrepresenting the plaintiff's status as a driver. *Id.* at 488-489. This Court held that

the defendant was entitled to void the policy because the plaintiff did not qualify as an innocent third party and the plaintiff had defrauded the defendant by relying on his brother to obtain insurance for his vehicle instead of purchasing the insurance himself. *Id.* The Court further stated in dicta, "[A]n insurer does not owe a duty to the insured to investigate or verify that individual's representations or to discover intentional material misrepresentations." *Id.* at 489. Contrary to Titan's characterization of *Hammoud*, the Court's final observation merely reiterated the general rule that an insurer owes an *insured* no duty to investigate the insured's assertions in the insurance application. And, as Titan recognizes, binding caselaw in Michigan prevents an insurer from avoiding liability relating to the injuries of innocent third parties. In summary, *Hammoud* presents no basis for questioning the continuing vitality of *Farmers Ins Exch*, *Ohio Farmers*, or *Kurylowicz*.

Titan next invokes *Manier v MIC Gen Ins Co*, 281 Mich App 485; 760 NW2d 293 (2008), as a second example of this Court's retreat from the "easily ascertainable" rule. In *Manier*, we ruled that the defendant insurance company could not have "easily ascertained" that the insured party misrepresented that her son lived with her and that therefore "no duty of investigation compelled defendant to perform further research regarding [the son's] residence . . . ." *Id.* at 490. We reject that either *Hammoud* or *Manier* require abandonment of the "easily ascertainable" standard. Rather, a reading of these opinions reveals that they relied on and ratified the central holdings of *Farmers Ins Exch*, *Ohio Farmers*, and *Kurylowicz*.

In this case, the Holmeses qualify as innocent third parties, and the undisputed facts pertinent to Hyten's

misrepresentation demonstrate as a matter of law the readily ascertainable nature of Hyten's misrepresentation. As the circuit court pointed out, Titan could have requested a copy of Hyten's license or obtained her driving record. Because Titan could have easily ascertained Hyten's misrepresentation and because the coverage implicated benefits innocent third parties, Titan may not reform Hyten's policy to reduce the residual coverage to the statutory minimum limits. The circuit court correctly ruled that Hyten and Farm Bureau were entitled to judgment as a matter of law.

### III. LEGAL UNDERPINNINGS OF THE "EASILY ASCERTAINABLE" RULE

Titan strenuously contends that this Court wrongly decided and continues to incorrectly rely on the caselaw adopting the "easily ascertainable" rule. In Titan's view, *Kurylowicz* and its progeny stand "on a very shaky legal foundation." Titan argues that the "easily ascertainable" standard constitutes a judicially created duty that should be overruled and discarded. Titan's arguments hold superficial appeal. At first blush, it may appear that this Court has indeed crafted a vehicle for evading or undermining the legislative intent embodied in MCL 257.520(f)(1) and (g). Consequently, we turn to a careful examination of the statutes that must guide our analysis and their application to the facts at hand.

### A. STATUTORY FRAMEWORK

Indisputably, courts must construe an insurance policy in harmony with the statutes when possible. *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 359; 764 NW2d 304 (2009). Titan relies on portions of the FRA, but "[t]he no-fault act, as opposed to the financial responsibility act, is the most recent

expression of this state's public policy concerning motor vehicle liability insurance." *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225, 232; 531 NW2d 138 (1995).

In 1970, the Legislature amended MCL 500.3220, which limits the grounds on which an insurance company may cancel an automobile liability policy. 1970 PA 161. The preamendment version of MCL 500.3220 prohibited an automobile liability insurer from cancelling coverage after a policy had remained in effect for 55 days, except for any one of 12 enumerated reasons. The statute allowed an insurer to cancel a policy after 55 days if, for example, "during the 55 days following the date of original issue thereof the risk is unacceptable to the insurer," "the insured failed to disclose material information needed for the proper rating or acceptance of the risk," "the insured does not reside at the address specified in the policy and fails to furnish the correct address to the insurer within a reasonable period," or "the insured failed to disclose fully in his application this record of motor vehicle accidents or traffic violations as are material to the insurer's acceptance of the risk." MCL 500.3220(a), (c), (d), and (e), as added by 1966 PA 342. By amending MCL 500.3220 in 1970, the Legislature eliminated virtually all the specific reasons permitting cancellation beyond the 55-day window. The current version of MCL 500.3220 reads in its entirety:

Subject to the following provisions no insurer licensed to write automobile liability coverage, after a policy has been in effect 55 days or if the policy is a renewal, effective immediately, shall cancel a policy of automobile liability insurance except for any 1 or more of the following reasons:

(a) That during the 55 days following the date of original issue thereof the risk is unacceptable to the insurer.

(b) That the named insured or any other operator, either resident of the same household or who customarily operates an automobile insured under the policy has had his operator's license suspended during the policy period and the revocation or suspension has become final.

We read the current version of MCL 500.3220 *in pari materia* with the no-fault act, which the Legislature enacted in 1972. MCL 500.3101 *et seq.*, as added by 1972 PA 294. Both statutes express the state's policy of protecting "a source and a means of recovery" for automobile accident victims. *Kurylowicz*, 67 Mich App at 574. Both statutes also generate "significant incentive towards the goal of insurance coverage for all automobiles." *McKendrick v Petrucci*, 71 Mich App 200, 207; 247 NW2d 349 (1976). In decreeing no-fault insurance compulsory for all motorists, the Legislature contemporaneously undertook to highly regulate the business of insurance companies offering no-fault insurance policies in this state. "The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). "In effect, insurance companies [offering no-fault coverage] are the instruments through which the Legislature carries out a scheme of general welfare." *Id.* at 597.

Keeping in mind the legislative purposes animating the no-fault act's comprehensive statutory scheme, we next consider the reasons for circumscribing the policy-cancellation period. At present, MCL 500.3220(a) contemplates that no-fault insurers may cancel coverage within 55 days of a policy's issuance if "the risk is unacceptable to the insurer." Alternatively phrased, an insurer may make its own risk assessment, without statutorily imposed restrictions. However, the Legislature limited to 55 days the period in which an insurer

can make its risk assessment. We conclude that MCL 500.3220(a) evidences the intent to afford no-fault insurers a definite window of time in which to investigate an insured for the purpose of assessing risk. Stated differently, MCL 500.3220(a) envisions that no-fault insurers will either perform an investigation to determine whether to accept a new risk or forfeit the opportunity to later decide that an insured's driving record or other characteristic should require cancellation of the policy. By limiting the period for policy cancellation to a certain end date, the statute promotes the goal of assured and adequate coverage embodied in the no-fault act. That said, we agree with Titan that no Michigan statute directly imposes on an insurance company the *duty* to investigate the representations of an insured. However, MCL 500.3220 does express that if an insurer opts against undertaking an early investigation, it may not use later-acquired information to terminate its policy obligations except under very limited circumstances. MCL 500.3220(b).

### B. MISREPRESENTATION AND REASONABLE RELIANCE

In *Kurylowicz*, 67 Mich App at 570, the defendant misrepresented that he had no previous license suspensions. After an accident that killed one motorist and injured five others, State Farm rescinded the policy and later brought a declaratory judgment action seeking a determination of the rights of the injured parties under the policy. *Id*. In lieu of deciding whether State Farm had properly declared the policy void *ab initio*, this Court elected to address whether State Farm had "reasonably relied on the representations of the insured so as to justify a holding that the policy was procured by fraud." *Id*. at 574. The Court concluded that "where an automobile liability insurer retains premiums, notwith-

standing grounds for cancellation reasonably discoverable by the insurer within the 55-day statutory period as prescribed by [MCL 500.3220], the insurer will be estopped to assert that ground for rescission thereafter." *Id.* at 579.

The "reasonable reliance" standard advanced in *Kurylowicz* derived from the common law of fraud. To establish a prima facie fraud claim, a plaintiff must show that it acted in reliance on the defendant's material misrepresentation. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 38-39; 761 NW2d 151 (2008). "This Court has frequently reiterated that, to sustain a fraud claim, the party claiming fraud must *reasonably* rely on the material misrepresentation." *Id.* at 39. "Reasonable reliance also must exist to support claims of innocent misrepresentation." *Id.* "A misrepresentation claim requires reasonable reliance on a false representation. There can be no fraud where a person has the means to determine that a representation is not true." *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994) (citation omitted). Thus, proof of misrepresentation demands that the injured party establish justifiable reliance on misleading or false statements.

### C. EASILY ASCERTAINABLE MISREPRESENTATIONS AND POLICY REFORMATION

Titan submits that on August 24, 2007, Hyten misrepresented that she was an eligible purchaser of no-fault automobile insurance under MCL 500.2103(1). Titan further asserts that it issued an insurance policy to Hyten in reliance on her misrepresentation that she possessed a valid driver's license on August 24, 2007. In Titan's estimation, Hyten's misrepresentation entitles Titan to reform the policy by reducing the liability limits to the statutorily prescribed minimums. Titan's

position ignores whether its reliance qualified as reasonable, particularly in light of MCL 500.3220. Titan undisputedly had awareness of the 55-day deadline for determining whether to accept a new risk. The plain language of MCL 500.3220 also placed Titan on notice that after the passage of 55 days, it lost the ability to cancel a policy, even if later-acquired information brought to light a material misrepresentation. Titan apparently decided not to investigate the risk it undertook by insuring Hyten. Given this election, and the easily ascertainable nature of Hyten's unlicensed status, Titan has not shown that it *reasonably* relied on Hyten's misrepresentation when it neglected to cancel her policy within 55 days of its issuance.

Actions to reform or rescind a contract sound in equity. *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 587; 458 NW2d 659 (1990); *Van Etten v Mfr Nat'l Bank of Detroit*, 119 Mich App 277, 282-283; 326 NW2d 479 (1982). The law governing innocent misrepresentation, the concept at the heart of this case, also derives from and rests on equitable principles:

> The defenses of innocent misrepresentation and silent fraud are not based in law but in equity. The equitable court awarding a remedy must look to the most just result. Therefore, should the court on remand find there was innocent misrepresentation or silent fraud it must decide which remedy would be the most equitable under the unique circumstances of the case. The court is not confined to the polar opposite remedies urged by the opposing parties: full enforcement or total abrogation of the indemnity agreement. Other remedies, such as reformation, restitution, or partial enforcement of the contract, may be examined. [*United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 134; 313 NW2d 77 (1981).]

In effect, Titan seeks the benefit of an equitable ruling that it may avoid liability to innocent third

parties on the basis of Hyten's misrepresentation, notwithstanding its deliberate election to forgo a risk assessment. "[E]quity aids the vigilant, not those who sleep on their rights." *Farley v Carp*, 287 Mich App 1, 7; 782 NW2d 508 (2010) (quotation marks and citations omitted). Alternatively stated, "equity will not lend its aid to those who are not diligent in protecting their own rights." *Burlage v Radio Cab Co*, 321 Mich 319, 325; 32 NW2d 465 (1948). Permitting Titan to avoid the consequences of its conscious decision to forgo investigation of Hyten's insurability would contradict the no-fault act's purpose of assured, adequate compensation and thwart the purpose reflected in MCL 500.3220. Simply put, Titan's reliance on Hyten's representations cannot qualify as reasonable in light of the public policy expressed in the no-fault act and MCL 500.3220. Far from conflicting with Michigan's statutory no-fault insurance framework, the "easily ascertainable" standard fosters statutory objectives and comports with basic equitable principles. Accordingly, we respectfully decline Titan's invitation to overrule *Kurylowicz* and its progeny.

IV. HYTEN'S CURE OF THE MISREPRESENTATION

Under the circumstances presented here, a second legal basis exists for denying Titan's request to reform the policy. We recognize that the circuit court did not consider any alternative rationale for its holding; given the firm establishment of the "easily ascertainable" standard, neither party raised additional legal arguments. But because Titan has questioned the legal foundation for granting summary disposition in Hyten's favor, we consider a related legal question regarding which the facts necessary for resolution ap-

pear in the record. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002).

Titan asserts that on the date Hyten signed the insurance application, she misrepresented that she would have her license by August 24, 2007. Because Hyten's subsequent acquisition of her license cured this earlier misrepresentation, we reject Titan's argument. Titan does not dispute that on September 20, 2007, the state restored Hyten's license and she became eligible to purchase no-fault insurance. Nor does Titan suggest that it would have refused to sell Hyten insurance, or charged her an increased premium, on the basis of either her driving record or her failure to obtain her license on August 24, 2007.[8] In the circuit court, Titan submitted an affidavit signed by Beverly Barrows, the manager of Titan's underwriting department. Barrows attested that Titan would not have issued coverage to an unlicensed driver. However, the affidavit noticeably omits any averment that Titan would have refused to insure Hyten on September 20, 2007, or would have differently rated her risk. Because Titan cannot substantiate that it endured any harm occasioned by the August 2007 innocent misrepresentation, it is not entitled to equitable relief.

The Second Restatement of Contracts supplies the legal principle that should dictate the outcome of this case:

§ 165. Cure by Change of Circumstances

If a contract is voidable because of a misrepresentation and, before notice of an intention to avoid the contract, the facts come into accord with the assertion, the contract is no

---

[8] Because Titan deliberately opted against performing any investigation of Hyten's insurability, it cannot now claim that it would have cancelled the policy within 55 days had it known of Hyten's driving record.

longer voidable unless the recipient has been harmed by relying on the misrepresentation. [1 Restatement Contracts, 2d, § 165, pp 448-449.]

The comment to this section elaborates as follows:

> *a. Rationale.* In general, the recipient of a misrepresentation need not show that he has actually been harmed by relying on it in order to avoid the contract. If, however, the effect of misrepresentation has been cured because the facts have been brought or have otherwise come into accord with the assertion before he has notified the maker of his intention to avoid the contract, there is ordinarily little likelihood of harm. The rule stated in this Section precludes avoidance in such a case, unless the recipient shows that he has actually been harmed. It applies to fraudulent as well as to non-fraudulent misrepresentations. [*Id.* at 449.][9]

Once Hyten received her license, the prior innocent misrepresentation lost its effectiveness as a potential ground for contract cancellation. Because no evidence of record refutes that Titan would have insured Hyten on September 20, 2007, and Hyten cured her unlicensed status approximately five months before the accident, we hold that Titan has failed to demonstrate an equitable basis for rescission or reformation of the contract.

V. STANDING

Finally, Titan urges that the circuit court erred by finding that Farm Bureau had standing to challenge Titan's attempt to reform the insurance contract. We consider de novo the legal question whether a party has

---

[9] "Although there is little authority in support, it is undoubtedly true that where the facts subsequently become in accord with an innocent misrepresentation prior to rescission, the right to rescind is lost." 27 Williston, Contracts (4th ed), § 69:49, p 116. We have not located any published authority opposed to the proposition, either.

standing. *Manuel v Gill*, 481 Mich 637, 642; 753 NW2d 48 (2008). To have standing, a party must possess "some real interest in the cause of action" or "the subject matter of the controversy." *MOSES, Inc v Southeast Mich Council of Gov'ts*, 270 Mich App 401, 414; 716 NW2d 278 (2006) (quotation marks and citations omitted). A party need not share privity of contract to have standing in a declaratory judgment action concerning a question of coverage under an insurance policy as long as the declaratory judgment might affect the party's rights. *Allstate Ins Co v Hayes*, 442 Mich 56, 63; 499 NW2d 743 (1993).

Farm Bureau was not in privity of contract with either Titan or Hyten, but if the circuit court had reformed Titan's insurance contract with Hyten, then Farm Bureau as the insurance company for the innocent third parties (the Holmeses) might have had to cover the costs of their injuries. Consequently, Farm Bureau had a real interest in the outcome of the litigation, and the circuit court correctly determined that Farm Bureau had standing.

Affirmed.

K. F. KELLY, J., concurred with GLEICHER, P.J.

ZAHRA, J., did not participate.