# STATE OF MICHIGAN

# COURT OF APPEALS

ALI BAZZI,

        Plaintiff-Appellee,

and

GENEX PHYSICAL THERAPY, INC., ELITE
CHIROPRACTIC CENTER, P.C., and
TRANSMEDIC, L.L.C.,

        Intervening Plaintiffs-Appellees,

v

SENTINEL INSURANCE COMPANY,

        Defendant/Third-Party Plaintiff-
Appellant,

and

HALA BAYDOUN BAZZI and MERIAM
BAZZI,

        Third-Party Defendants-Appellees.

FOR PUBLICATION
June 14, 2016

No. 320518
Wayne Circuit Court
LC No. 13-000659-NF

Before: SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

BECKERING, J. (*dissenting*).

At issue in this appeal is whether our Supreme Court's decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), which threw out the "easily ascertainable rule," adversely impacted and necessarily abrogated the "innocent third-party rule," which I maintain is a distinctly different rule and one to which this Court has adhered for decades without complaint or redirection from either our Supreme Court or our Legislature. With all due respect for my esteemed colleagues, I would conclude that the easily ascertainable and innocent third-party rules are not "one and the same," and case law bears out a clear distinction. Furthermore, because they are different rules and because the coverage at issue in *Titan*—contractually-based

-1-

excess liability coverage—is substantially different from the type of coverage at issue in this case—statutorily-mandated benefits—I would decline to extend *Titan* and would instead adhere to 30 years of this Court's published decisions applying the innocent third-party rule. In this respect, I would affirm the decision of the circuit court, save for the circuit court's decision to limit PIP benefits to the statutory minimums set forth in MCL 257.520, which does not apply to the coverage at issue.

## I. THE INNOCENT THIRD-PARTY RULE IS NOT THE SAME AS THE EASILY ASCERTAINABLE RULE

Before diving into the impact of *Titan*, I would be remiss not to address the lead and concurring opinions' conclusion that the easily ascertainable rule and the innocent third-party rule are one and the same. They are not. My colleagues conclude that they are the same in part because they both necessarily involve an innocent third party. While this observation is accurate, any attempt to equate them disregards the context in which they have been used and overlooks pertinent caselaw. The innocent third-party rule has consistently been applied to prevent an insurer from avoiding liability as to *mandatory* coverage—namely PIP benefits, while the easily ascertainable rule had, before it was overruled in *Titan*, consistently been applied to prevent an insurer from avoiding *optional* coverage, i.e., non-statutory coverage, when the insured's fraud was easily ascertainable. See, e.g., *Farmers Ins Exch v Anderson*, 206 Mich App 214; 520 NW2d 686 (1994), overruled by *Titan*, 491 Mich 547; *Kurylowicz*, 67 Mich App 568.

The difference between the rules can be put simply: the innocent third-party rule acts as a prohibition against rescinding a policy that was procured by fraud, *but only as to mandatory coverage*—specifically PIP coverage—for innocent third parties, while the now-overruled easily ascertainable rule prevented a defrauded insurer from avoiding liability with respect to *optional coverage*. Stated differently, the innocent third-party rule concerns statutory benefits, and the easily ascertainable rule pertains to benefits originating in the insurance policy. Thus, the rules serve distinct purposes and relate to different types of insurance coverage. This Court has recognized this very principal in the past. See *Manier v MIC Gen Ins Co*, 281 Mich App 485, 489-492; 760 NW2d 293 (2008), overruled by *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012); *Lake States Ins Co v Wilson*, 231 Mich App 327, 331-332; 586 NW2d 113 (1998); *Anderson*, 206 Mich App at 216-219. For instance, in *Anderson*, 206 Mich App at 217, a case that was overruled by *Titan* for its application of the easily ascertainable rule, the insurer, much like the insurer in *Titan*, conceded liability for the statutorily mandated $20,000/$40,000 limits found in MCL 257.520(f)(1).[1] The issue before this Court was whether the insurer, "upon discovering that the insured has made fraudulent and material misrepresentations in procuring the policy, may assert rescission as a basis to limit its liability to the statutory minimum, even when innocent third parties have been injured." *Anderson*, 206 Mich App at 217. In resolving this issue, the panel noted the innocent third-party rule and declared that, in light of the rule, the

_____

[1] This was the precise situation in *Titan*, 491 Mich at 552 n 2, as the insurer expressly acknowledged its liability for mandatory coverage and only sought to rescind the policy as to excess or optional liability coverage.

insurer conceded it could not rescind the policy as to *statutorily mandated coverage*, i.e., the $20,000 and $40,000 limits imposed by MCL 257.520(f)(1). *Id*. at 218. This, of course, was required, in large part, by MCL 257.520(f)(1).[2] Nevertheless, the insurer sought to limit its liability for *optional, non-statutory coverage*. Optional liability coverage, which is addressed in MCL 257.520(g), does not include the same statutory limitation on obtaining rescission in the case of fraud. *Anderson*, 206 Mich App at 218. Accordingly, "when fraud is used as a defense in situations such as these," the panel explained, "the critical issue necessarily becomes whether the fraud could have been ascertained easily by the insurer at the time the contract of insurance was entered into." *Id*. at 219. In other words, the easily ascertainable rule was to be applied to determine whether the insurer could rescind the policy *as it pertained only to optional liability coverage*.[3] So long as the fraud was not easily ascertainable, the insurer could void the policy as to this optional liability coverage. *Id*. If the fraud was easily ascertainable, the burden was essentially on the insurer for not having discovered and dealt with it. A review of our caselaw reveals that the easily ascertainable rule has a history of application to optional liability coverage. See, e.g., *Titan*, 491 Mich 547; *Manier*, 281 Mich App 485; *Kurylowicz*, 67 Mich App 568.

The panel in *Wilson*, in a slightly different factual scenario involving PIP benefits, reinforced the idea that the rules are not the same, specifying that the innocent third-party rule acts as a bar against rescinding a policy as it concerns statutorily mandated benefits, and that the easily ascertainable rule pertains to an insurer's attempts to limit its liability as to optional coverage.[4] The panel in *Wilson* applied the same type of bar against rescission as found in MCL 257.520(f)(1) to PIP benefits based on their mandatory nature. The panel summarized the innocent third-party rule and the easily ascertainable rule and their respective applications as follows:

---

[2] MCL 257.520(f)(1) does not require *innocence*.

[3] The panel in *Anderson* even went so far as to clarify that the easily ascertainable rule applied only in situations where fraud was asserted as a means for avoiding optional liability coverage. *Anderson*, 206 Mich App at 219 ("Despite the holdings in *Ohio Farmers* [*Ins Co v Mich Mut Ins Co*, 179 Mich App 355, 358, 364-365; 445 NW2d 228 (1989)] and *Katinsky* [*v Auto Club Ins Ass'n*, 201 Mich App 167; 505 NW2d 895 (1993)], we do not go so far as to say that a validly imposed defense of fraud will absolutely void any optional excess insurance coverage in all cases. To the contrary, when fraud is used as a defense in situations such as these, the critical issue necessarily becomes whether the fraud could have been ascertained easily by the insurer at the time the contract of insurance was entered into.").

[4] In *Wilson*, a case that involved PIP benefits, the insurer, based on fraud, sought to reform the policy, which was noncoordinated, into a policy that was coordinated with the insured's health insurance, thereby relieving the insurer of the obligation to pay duplicative medical benefits to the insured. *Wilson*, 231 Mich App at 331. Concluding that noncoordinated coverage was optional under the no-fault act, the panel found that the innocent third-party rule did not preclude the reformation sought by the insurer. *Id*. at 332-333. And, because the fraud at issue in that case was not easily ascertainable, the panel ruled that the insurer could reform the contract in the manner it sought. *Id*. at 333-334.

> Once an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle, the insurer is estopped from asserting fraud to rescind the insurance contract. *However, an insurer is not precluded from rescinding the policy to void any 'optional' insurance coverage, unless the fraud or misrepresentation could have been 'ascertained easily' by the insurer.* [*Id.* at 331-332 (citations omitted; emphasis added).]

Thus, as is apparent from this Court's opinion in *Wilson*, the innocent third-party rule and the easily ascertainable rule are different. The innocent third-party rule concerns mandatory coverage and arises from the fact that the coverage is mandatory, while the easily ascertainable rule applies to optional coverage. Essentially, the innocent third-party rule is a rule that applies to PIP benefits and protects entitlement to those benefits. Consistently with this rationale, this Court has applied the innocent third-party rule in the context of PIP benefits. See, e.g., *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 360; 764 NW2d 304 (2009), overruled in part on other grounds *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503; 821 NW2d 117 (2012).

This distinction is of critical importance to the instant case, as the concern in this case is with mandatory PIP benefits, not optional excess liability coverage.[5] Moreover, this distinction explains away with relative ease the result that the lead opinion describes as "bizarre" and the concurring opinion says "simply make[s] no sense." That is, in concluding that the easily ascertainable rule and the innocent third-party rule are essentially the same, both the lead opinion and the concurring opinion postulate that the rules must be treated as the same, because if an insurer can avoid liability when fraud is easily ascertainable, it must logically be able to avoid liability where the fraud was not easily ascertainable. If we were truly dealing with rules that applied in the same context and to the same type of coverage, this concern would be a valid one. However, given that caselaw clearly applies the innocent third-party rule to mandatory coverage, whereas the easily ascertainable rule applies to optional coverage, the rules can be reconciled and the concerns of the lead and concurring opinions quickly dissipate. With regard to mandatory coverage, whether the fraud was easily ascertainable matters not; the insurer is not permitted to rescind once an innocent third party is injured. However, with regard to optional coverage, the insurer is only prevented from rescinding the policy as it concerns such optional coverage if the fraud was easily ascertainable. Our Supreme Court in *Titan* did away with the bar against an insurer from rescinding optional coverage in the face of easily ascertainable fraud.

I take issue with the lead and concurring opinions' conclusions that our Supreme Court's decision in *Titan* necessarily recognized that the innocent third-party rule and the easily ascertainable rule are one and the same. In fact, our Supreme Court in *Titan* made no mention of the innocent third-party rule, nor did it weigh in on whether fraud could be asserted as a basis to avoid liability in the context of statutorily mandated benefits. The subject of statutorily mandated coverage was simply not before the Court in *Titan*, as the insurer in that case expressly conceded its liability for mandatory coverage and only sought a declaration "that it was not

---

[5] This distinction is discussed in more detail below.

obligated to indemnify [the insured] for any amounts *above* the minimum liability coverage limits required by the financial responsibility act . . . ." *Titan*, 491 Mich at 552 n 2. Hence, the issue before the *Titan* Court was the application of the easily ascertainable rule, and *Titan* did not implicate the innocent third-party rule.

Along similar lines, I note that the lead and concurring opinions observe that our Supreme Court in *Titan* overruled this Court's decision in *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355, 358, 364-365; 445 NW2d 228 (1989), and conclude that: (1) *Ohio Farmers* discussed the innocent third-party rule; and (2) therefore, the Supreme Court in *Titan* must have necessarily overruled the innocent third-party rule. Assuming that the decision in *Ohio Farmers* implicated the innocent third-party rule, I disagree with my colleagues' conclusions. First, our Supreme Court in *Titan*, 491 Mich at 551 n 1, did not make any sweeping declarations about *Ohio Farmers*;[6] rather, it only overruled the case "[t]o the extent" that it "held or stated that an insurer is estopped from denying coverage on the basis of fraud when it could have easily ascertained the fraud . . . ." This language is in line with the easily ascertainable rule, not the innocent third-party rule. Noticeably absent from this qualified and narrow rejection of *Ohio Farmers* is any discussion about whether an insurer can deny *mandatory*, statutorily required coverage to an innocent third party on the basis of fraud. Thus, even assuming that *Ohio Farmers* only implicated the innocent third-party rule, an assumption that is not entirely apparent from the text of the *Ohio Farmers* decision, the Court in *Titan* made no comment about the innocent third-party rule. Second, contrary to what the lead and concurring opinions postulate—and regardless of what *Ohio Farmers* actually says—our Supreme Court in *Titan* seemed to think that *Ohio Farmers* was an easily-ascertainable-rule case. See *Titan*, 491 Mich at 563-564 ("[U]nder the *Kurylowicz* rule, an insurer may not avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud when the fraud was *easily ascertainable and the claimant is a third party*. See, e.g., *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355; 445 NW2d 228 (1989)."). (Emphasis added). Accordingly, any suggestion that *Titan* was overruling *Ohio Farmers* for some other reason—for instance, that it discussed the innocent third-party rule—is not apparent from the Court's decision in *Titan*. Third, and on a somewhat related note, I disagree that *Titan*'s qualified overruling of *Ohio Farmers* can be construed to reject a rule that *Titan* itself never mentioned.[7]

Aside from taking issue with the conclusion that the rules are one in the same, I take issue with the lead opinion's conclusion that both the easily ascertainable rule and the innocent third-party rule "have their roots in the *Kurylowicz* decision." Examination of the case conclusively

---

[6] *Ohio Farmers*, a somewhat curious decision that this Court later backed away from in *Anderson*, 206 Mich App at 219, cites *Kurylowicz*, but only for its "policy considerations." See *Ohio Farmers*, 179 Mich App at 363. Thus, as the lead and concurring opinions correctly note, *Ohio Farmers* does not appear to implicate the easily ascertainable portion of the *Kurylowicz* decision, despite what our Supreme Court believed to be the case in *Titan*. See *Titan*, 491 Mich at 563-564.

[7] This is not to say, however, that there are no reasonable arguments as to whether portions of the *Titan* decision cast doubt on the innocent third-party rule. Those arguments are discussed below.

dispels the notion that the innocent third-party rule was sired by *Kurylowicz*. Indeed, the sole concern in *Kurylowicz* was whether an insurer has a duty to investigate representations made by an insured, and the panel in *Kurylowicz* expressly rejected the opportunity to weigh in on the innocent third-party rule. Also, there is no indication that *Kurylowicz* involved a claim for mandatory coverage.

In *Kurylowicz*, 67 Mich App at 569, the plaintiff, State Farm, appealed as of right a declaratory judgment declaring that it was not allowed to rescind a policy for optional,[8] or non-statutorily mandated liability coverage ab initio when the policy was procured through fraud. In that case, the insured, Robert John Kurylowicz, made a material misrepresentation in his application for insurance when answering the question of whether his driver's license had ever been revoked or suspended. *Id*. at 570. State Farm, which relied on our Supreme Court's decision in *Keys v Pace*, 358 Mich 74; 99 NW2d 547 (1959), argued that an insurer was entitled to rescind a policy based on a material misrepresentation, and that there was no duty imposed on the insurer to investigate the subject of the alleged fraud.[9] *Kurylowicz*, 67 Mich App at 571.

This Court, in an effort to avoid the application of *Keys*, noted that our Legislature had amended various statutes since our Supreme Court issued *Keys*, including statutes regarding the cancellation of insurance policies, MCL 500.3220, and the motor vehicle accident claims act, MCL 257.1101, which the panel described as providing compensation for citizens injured by uninsured tort-feasors. *Kurylowicz*, 67 Mich App at 573. Further, this Court noted that, although the case currently before it was not controlled by the no-fault act, the enactment of the no-fault act, MCL 500.3101 *et seq.*, reflected a legislative policy of providing compensation in order to lessen "the tragic social and economic consequences that often accompany automobile mishaps." *Kurylowicz*, 67 Mich App at 573.[10] Reading all of the legislative enactments as a whole, this

---

[8] Although not expressly stated in the *Kurylowicz* opinion, it is apparent that this liability coverage was *optional* liability coverage. Indeed, the policy at issue in *Kurylowicz* was issued before enactment of the no-fault act, see *Kurylowicz*, 67 Mich App at 573, and at that time, "motorists could choose whether or not to carry liability insurance[,]" *Coburn v Fox*, 425 Mich 300, 308; 389 NW2d 424 (1986).

[9] The refusal to impose upon insurers the burden of investigating representations by the insured was the premise of the holding in *Keys*:

> Moreover, if inquiry is to be demanded, is it enough to stop with the traffic court? Might not the accident suggest physical or psychiatric defects? Should investigations not also be made of the past hospitalizations of the insured? Where will we say this may stop within the existing economic framework? It is doubtful whether one who deliberately sets out to swindle an insurance company can be prevented from doing so by any such requirement, and it is even more doubtful that there is enough of this practice to warrant the placing upon the insurance business of a requirement so onerous. [*Keys*, 358 Mich at 84.]

[10] In fact, the panel, recognizing that the cause of action in that case accrued before the enactment of the no-fault act, expressly stated that, because the cause of action did not concern

Court arrived at the idea that the statutes formulated a "policy" of providing "persons who suffer loss due to the tragedy of automobile accidents in this state . . . a source and a means of recovery." *Id.* 574. "Given this policy," said the panel, "it is questionable whether a policy of automobile insurance can ever be held void *ab initio* after injury covered by the policy occurs." *Id.*[11]

With that "policy" as a backdrop, the panel cited a treatise for the proposition that an insurer's liability "*with respect to insurance required by the act*" becomes absolute "whenever injury or damage covered by such policy occurs . . . ." *Id.* (citation and quotation marks omitted). However, the panel was quick to point out that "[t]hat issue is not before us in this case,"—whether liability *with respect to insurance required by law* became absolute upon the happening of an injury—"so we need not decide it." *Id.* Hence, the panel expressly declined to comment on the innocent third-party rule—which is implicated in situations involving the "liability of the insurer with respect to insurance required by the [no-fault] act." Instead, stated the panel, "we need only decide whether, under the facts of the case at bar, *State Farm reasonably relied on the representations of the insured* so as to justify a holding that the policy was procured by fraud, thus warranting a judicial determination that the policy was void *ab initio*." *Id.* (first emphasis added).

The framing of the issue by the panel in the above paragraph is of particular significance, and illustrates the fatal flaw in the lead opinion's conclusion that *Kurylowicz* spawned the innocent third-party rule. The focus of the issue in that case was the insurer's reasonable reliance, or lack thereof, on the insured's representations. And, when the panel mentioned the scenario that implicates the innocent third-party rule—liability mandated by statute and an injured third party—it *expressly declined* to consider it in any detail. It cannot reasonably be argued that *Kurylowicz* created a rule it took special care to avoid.

Indeed, the only issue in *Kurylowicz* concerned whether the insurer should have accepted certain representations at face value, or whether the insurer should have discovered that the representations were false. The rest of the opinion in *Kurylowicz* is spent answering this question, and only this question, as the panel cited caselaw from other jurisdictions that imposed on an insurer a duty to investigate representations made by insureds in insurance applications. *Id.* at 575-577, citing *Allstate Ins Co v Sullam*, 76 Misc2d 87; 349 NYS2d 550 (1973); *State Farm Mut Ins Co v Wood*, 25 Utah 2d 427; 483 P2d 892 (1971); *Barrera v State Farm Mut Auto Ins Co*, 71 Cal2d 659; 79 Cal Rptr 106; 456 P2d 674 (1969); *State Farm Mut Auto Ins Co v Wall*, 92 N J Super 92; 222 A2d 292 (1966). The panel then went on to impose a duty on the insurer in that case to make a reasonable investigation of an insured's representations in an application for insurance. This is precisely contrary to the tenants of *Keys*.

---

the no-fault act, "our holding in this case cannot be precedent for actions arising after the effective date of no-fault . . . ." *Kurylowicz*, 67 Mich App at 573.

[11] Despite the Supreme Court's criticism in *Titan* about *Kurylowicz*'s policy arguments—discussed in more detail below—I would be remiss not to note that in *Coburn v Fox*, 425 Mich 300, 310 n 3; 389 NW2d 424 (1986), our Supreme Court cited with approval this very same policy rationale from *Kurylowicz*.

Because the instant case does not involve the imposition of a duty on the insurer to investigate representations made by a prospective insured, *Kurylowicz*, and the fact that *Titan* overruled *Kurylowicz* for failing to follow the precedent established in *Keys*, is not dispositive in this case. Likewise, any assertion that the innocent third-party rule is the same as *Kurylowicz*'s easily ascertainable rule is incorrect and does not resolve the issue in this case. However, that does not end the inquiry; it merely ferrets out a red herring proffered by the lead and concurring opinions. Indeed, although the Supreme Court in *Titan* overruled *Kurylowicz* for ignoring precedent established in *Keys*, the Court's opinion went beyond merely overruling this Court's decision for ignoring Supreme Court precedent. Notably, for purposes of this opinion, the Court in *Titan* went on to: (1) clarify the conditions under which a policy for insurance can be rescinded; and (2) decry what it described as the "reasoning" employed by *Kurylowicz*. It is in those aspects of *Titan* that the parties argue the Court eroded the support on which the innocent third-party rule rests, and which require extensive discussion in this case. In order to resolve the more pertinent issue of whether the Court's analysis in *Titan* erodes support for the innocent third-party rule, I find it necessary to examine *Titan*, as well as the origins and development of the innocent third-party rule.

## II. THE INNOCENT THIRD-PARTY RULE

The innocent third-party rule is a rule that has been firmly entrenched in this Court's jurisprudence for the past three decades and never questioned by our Supreme Court, nor has it ever prompted any revision in the no-fault law by the Legislature. In general, an insurer may rescind a policy *ab initio* because of fraud. *Roberts*, 282 Mich App at 360. However, under the innocent-third party rule, "an insurer may not void a policy of insurance *ab initio* where an innocent third party is affected" and the type of coverage at issue is mandatory coverage. *Id.*[12] As stated in *Roberts*, "caselaw demonstrates that the innocent third party doctrine ensures coverage for any person who is innocent of participation in the alleged fraud." *Id.* at 361.

For decades, this Court has adhered to the innocent third-party rule and precluded insurers from denying coverage to injured third parties who were innocent of the insured's fraud in cases where the insured sought statutory, i.e., non-optional, benefits. See, e.g., *Wilson*, 231 Mich App at 331; *Hammoud*, 222 Mich App at 488; *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517 n 2; 540 NW2d 480 (1995); *Auto-Owners Ins Co v Johnson*, 209 Mich App 61, 64; 530 NW2d 485 (1995); *Katinsky v Auto Club Ins Ass'n*, 201 Mich App 167, 170; 505 NW2d 895 (1993); *Darnell v Auto-Owners Ins Co*, 142 Mich App 1, 9; 369 NW2d 243 (1985); *Cunningham v Citizens Ins Co of America*, 133 Mich App 471, 477; 350 NW2d 283 (1984); *United Security Ins Co v Comm'r of Ins*, 133 Mich App 38, 43; 348 NW2d 34 (1984).[13] In fact, our Supreme

---

[12] Like other cases applying the innocent third-party rule, *Roberts* was a case involving an insured's application for mandatory PIP benefits, not optional liability coverage. See *id.* at 346-347.

[13] In addition, we note that Michigan is not alone in applying the innocent third-party rule in the context of automobile insurance. See 7 Am Jur 2d Automobile Insurance § 61 (summarizing the law from various jurisdictions).

Court, too, has protected innocent parties from the fraud of others in the context of insurance policies, albeit in a case dealing with a "statutory fire insurance policy." See *Morgan v Cincinnati Ins Co*, 411 Mich 267, 277; 307 NW2d 53 (1981). ("[W]henever the statutory clause limiting the insurer's liability in case of fraud by the insured is used it will be read to bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud."). Yet, as the parties point out, although this Court's precedent with regard to the innocent third-party rule is well established, the rationale and reasoning cited for the existence of the rule has varied. For instance, this Court's justifications for the innocent third-party rule have ranged from "public policy," see *Katinsky*, 201 Mich App at 171, to reliance on our Supreme Court's decision in *Morgan*, see *Darnell*, 142 Mich App at 10, to the language in MCL 257.520(f)[14] of the financial responsibility act, see *Wilson*, 231 Mich App at 331. Despite the varying rationales employed in arriving at the innocent third-party rule, its application has, until recently, been fundamental.

The challenges raised against the innocent third-party rule come from claims by Sentinel and others that our Supreme Court's decision in *Titan*, 495 Mich 547, implicitly overruled the innocent third-party rule. Accordingly, our Supreme Court's decision in *Titan* must be examined.

### III. *TITAN V HYTEN*

While much is being made about what *Titan* says and implies, it is helpful to focus first on what *Titan* does not say. For example, and most notably, the innocent third-party rule was *not* at issue in *Titan*, 491 Mich 547. In addition, *Titan* did not involve no-fault PIP benefits, nor did it involve any statutorily-rooted benefits, for that matter. Rather, in *Titan*, our Supreme Court examined the so-called "easily ascertainable" rule, and addressed whether, in a case involving excess liability coverage, an insurer could rescind that coverage based on fraud in the procurement of the policy when the fraud was easily ascertainable by the insurer. *Id*. at 550-551. In *Titan*, McKinley Hyten, whose mother, Anne Johnson, made fraudulent misrepresentations in her application for insurance, was involved in a motor vehicle accident with Howard and Martha Holmes. *Id*. at 552. In anticipation that the Holmses would file third-party tort claims against Hyten for their injuries, Titan sought to rescind the excess liability coverage based on Johnson's material misrepresentations. *Id*. In particular, Titan requested declaratory relief stating that, should the Holmses prevail in an action against Hyten, it was not required to provide liability coverage under the policy in excess of the statutory minimums for such coverage set forth in MCL 257.520 of the financial responsibility act.[15] The trial court held that the easily ascertainable rule applied and prevented Titan from avoiding liability in that case, as the court

---

[14] As will be explained in more detail below, MCL 257.520(f)(1) prohibits an insurer from avoiding liability up to certain statutory minimums for liability coverage, and pursuant to *Titan*, it is not applicable to the PIP benefits at issue in this case.

[15] Titan expressly acknowledged its responsibility for the minimum liability coverage limits— $20,000 per person/$40,000 per occurrence—required under the financial responsibility act. *Titan*, 491 Mich at 552 n 2. Hence, statutorily-mandated benefits were not at issue in *Titan*.

deemed the alleged fraud to be easily ascertainable.[16]  *Id*.  This Court affirmed, based on a line of decisions—dating back to *Kurylowicz*, 67 Mich App 568—which applied the easily ascertainable rule in cases where an insurer sought to rescind an insured's policy for optional coverage due to fraud by the insured in the procurement of that policy, but which fraud that was deemed to have been easily ascertainable by the insurer.  *Id*., citing *Titan Ins Co v Hyten*, 291 Mich App 445; 805 NW2d 503 (2011).

In examining the viability of the easily ascertainable rule, the Supreme Court in *Titan* began by recognizing that insurance policies are contracts, and that, "when a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute."  *Id*. at 554.  *Titan* cited *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW 2d 310 (1993), for the proposition that "because personal injury protection benefits are mandated by MCL 500.3105, that statute governs issues regarding an award of those benefits."  *Titan* noted that conversely, "when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are entirely contractual and construed without reference to the statute."  *Id*.  In addition, "because insurance policies are contracts, common-law defenses"—such as fraud—"may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute."  *Id*.

The Court first looked at the various common-law doctrines of fraud that exist in Michigan and concluded that common-law fraud did not include as an element that the party asserting the fraud prove that the fraud was not easily ascertainable.  Thus, the common-law doctrines of fraud did not support the existence of the easily ascertainable rule.  *Id*. at 556-557.

Next, the Court looked at the different remedies available in instances where a contract was procured by fraud.  *Id*. at 557-558.  Because contracts must be construed in conjunction with the applicable law, the Court recognized that common-law remedies "may be limited or narrowed by statute."  *Id*. at 558.  For instance, MCL 257.520(f)(1) of the financial responsibility act limited the ability of an insurer to avoid liability upon the happening of an injury "with respect to the insurance required by" the financial responsibility act—$20,000 for bodily injury or death to one person, and $40,000 for bodily injury or death to two or more persons—even in the face of fraud or misrepresentations.  *Id*., citing MCL 257.520(f)(1).  However, the Court concluded that the limitation imposed under MCL 257.520(f)(1) was limited to a liability policy that was certified under the financial responsibility act.  *Id*. at 559-560.[17]  Thus, the Court found no statutory limitations on the right to rescind a policy with regard to excess liability coverage, i.e., non-statutory coverage.  *Id*.

---

[16] The alleged fraud was in regard to whether Hyten possessed a valid driver's license at the time of the application for insurance.

[17] Per *Titan*, MCL 257.520(f)(1)—which is part of the financial responsibility act—does not apply to PIP benefits under the no-fault act.  *Id*. at 570.  Of note, the financial responsibility act was enacted 24 years before the no-fault act.  Hence, our Supreme Court in *Titan* discerned the Legislature's intended scope and applicability of MCL 257.520(f)(1) with respect to an act that did not yet exist when MCL 257.520(f)(1) was enacted.

With this backdrop, the Court turned its attention to the easily ascertainable rule and found that its earlier decision in *Keys*, 358 Mich 74, was controlling and that *Keys* had rejected the easily ascertainable rule over 50 years ago. *Titan*, 491 Mich at 562 ("*Keys* answered the precise question presented in this case . . . holding that an insurer may avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud, notwithstanding that the fraud may have been easily ascertainable, and notwithstanding that the claimant is a third party.").

Our Supreme Court noted that despite the fact that *Keys* had rejected the easily ascertainable rule, this Court later reached the opposite conclusion in *Kurylowicz*; thus *Titan* overruled *Kurylowicz* because it had ignored Supreme Court precedent. *Titan*, 491 Mich at 572. In addition, the Court went on to decry the reasoning employed in *Kurylowicz*.[18] First, the Court noted that *Kurylowicz* justified the easily ascertainable rule based on what it determined to be the "public policy" of the no-fault act. *Titan*, 491 Mich at 564-565. However, the Court rejected the idea that public policy supported the rule, explaining that the public policy of the no-fault act should be understood in terms of the provisions of the act itself, and not "a judicial effort to identify some overarching public policy . . . ." *Id.* at 565. "In other words, it is the policy of this state that all the provisions of the no-fault act be respected, and *Kurylowicz*'s efforts to elevate *some* of its provisions and *some* of its goals above other provisions and other goals was simply a means of disregarding the stated intentions of the Legislature." *Id.*

Second, in rejecting purported justifications for the easily ascertainable rule, the Court rebuffed the idea that MCL 500.3220[19]—which concerns the cancellation of automobile liability policies and restricts the ability of the insurer to cancel a policy—did not preclude an insurer from uncovering fraud and pursuing remedies aside from cancellation, such as rescission. *Id.* at 566-567. In this regard, the Court noted that rescission was a remedy that is distinct from cancellation. *Id.* at 567-568.

---

[18] The Court's reasoning employed in rejecting the easily ascertainable rule forms the basis for Sentinel's arguments on appeal that the innocent third-party rule does not survive *Titan*.

[19] MCL 500.3220 provides:

> Subject to the following provisions no insurer licensed to write automobile liability coverage, after a policy has been in effect 55 days or if the policy is a renewal, effective immediately, shall cancel a policy of automobile liability insurance except for any 1 or more of the following reasons:

> (a) That during the 55 days following the date of original issue thereof the risk is unacceptable to the insurer.

> (b) That the named insured or any other operator, either resident of the same household or who customarily operates an automobile insured under the policy has had his operator's license suspended during the policy period and the revocation or suspension has become final.

Finally, in concluding that there was no support in the law for the easily ascertainable rule, the Court considered—and rejected—the idea that the rule was "required for the protection of third parties." *Id.* at 568. The Court explained that "there is simply no basis in the law to support the proposition that public policy requires a private business in these circumstances to maintain a source of funds for the benefit of a third party with whom it has no contractual relationship." *Id.* The no-fault act protected third parties "in a variety of ways," reasoned the Court—including allowing tort actions—"but it states nothing about altering the common law that enables insurers to obtain traditional forms of relief when they have been the victims of fraud." *Id.* at 569. In addition, explained the Court, requiring an insurer to indemnify an insured in spite of fraud "relieves the insured of what would otherwise be the insured's personal obligation in the face of his or her own misconduct. As between the fraudulent insured and the insurer, there can be no question that the former should bear the burden of his or her fraud." *Id.* In other words, an insured is not entitled to benefit from the protection of excess liability insurance coverage above the statutorily required minimum when he or she purchased that coverage through fraud.

## IV. THE INNOCENT THIRD-PARTY RULE POST-*TITAN*

Before weighing in on the issue of whether *Titan* affects the validity of the innocent third-party rule in the context of statutorily required PIP benefits, I note that this Court has already had occasion to examine this matter, albeit in unpublished opinions. See *Frost v Progressive Mich Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued September 23, 2014 (Docket No. 316157); *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket No 319710). Those two cases, however, came to opposite conclusions. Rather than grant leave to appeal in one or both of those cases and resolve first-hand the breadth of its intentions in *Titan* and whether its rationale should be extended to the innocent third-party rule and statutorily mandated PIP benefits, our Supreme Court came to the somewhat perplexing conclusion that it should vacate both of those decisions, remand the cases to this Court, order this Court to accept as on leave granted yet another case regarding this issue—the instant case—and hold in abeyance any further rulings in *Frost* and *State Farm* pending our resolution in this matter.[20] Hence, I will briefly address *Frost* and *State Farm* and the reasoning provided by each panel in coming to its conclusion on the issue at hand.

### A. *FROST V PROGRESSIVE*

The first case to examine the innocent third-party rule in the context of PIP benefits following *Titan* was *Frost*. In *Frost*, Kenya Frost's minor daughter was injured in an accident while a passenger in an uninsured automobile. Citizens Insurance Company was assigned by the assigned claims plan to Frost's daughter's claim. Progressive had issued a policy of insurance to Frost on her own vehicle, which had been destroyed one month before Frost's daughter's accident. Citizens Insurance Company sought reimbursement from Progressive for benefits it

---

[20] See *Frost v Progressive*, 497 Mich 980; 860 NW2d 636 (2015); *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, 498 Mich 870; 868 NW2d 898 (2015).

had paid on Frost's daughter's behalf.[21]  *Frost*, slip op at 1-2.  Progressive claimed that it had rescinded Frost's policy *ab initio* because Frost had procured the policy through fraud.  Citizens argued that the innocent-third party rule barred Progressive's attempt to rescind as it pertained to Frost's daughter, and in response, Progressive contended that *Titan* had effectively eliminated the innocent third-party rule.  The circuit court found that Frost's daughter's accident occurred before Progressive attempted to rescind the policy, and that once the accident occurred, Progressive lost its ability to rescind as to Frost's daughter.  *Id*. at 2.  In short, the circuit court applied the innocent third-party doctrine.

On appeal to this Court, the panel overturned the trial court and held that its ruling was "inconsistent with our Supreme Court's holding" in *Titan*.  *Id*.  The panel explained:

> In [*Titan*], our Supreme Court held that absent statutory provisions to the contrary, "an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party."  [*Titan*, 491 Mich at 571.]  Accordingly, the claim by Frost's daughter did not bar Progressive from rescinding the policy in this case.

## B.  *STATE FARM V MICH MUNI RISK MGT AUTH*

Five months after *Frost* was issued, this Court reached the opposite conclusion in *State Farm*.[22]  Pertinent to our purposes in the present matter, one of the insurers in that case sought to rescind a policy for no-fault PIP benefits *ab initio* because it alleged that the policy had been procured by fraud.[23]  *State Farm*, slip op at 4.  The trial court disagreed, finding that, because coverage was required under the no-fault act, the policy could not be rescinded after an innocent third-party sustained injury that would otherwise be covered under the policy.  *Id*. at 5.

On appeal, a panel of this Court examined the innocent third-party rule and recognized that "[t]his Court has generally denied an insurer's right to rescind a policy of insurance in order to avoid payment of no-fault benefits to an innocent third party[.]"  *Id*. at 9, citing *Hammoud*, 222 Mich App at 488.  "Thus," the panel explained, " '[o]nce an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle, the insurer is estopped from asserting fraud to rescind the insurance contract.' "  *Id*., quoting *Katinsky*, 201 Mich App at 170 (citation omitted; alteration in *State Farm*).

---

[21] Citizens intervened in Frost's lawsuit against Progressive arising out of her effort to obtain reimbursement for losses incurred when her car was destroyed.

[22] As he acknowledges in his concurring opinion in this case, Judge Boonstra was on the panel in *State Farm*.  As my dissenting opinion makes clear, I think he and his panel got it right in *State Farm*.

[23] QBE Insurance Corporation sought to rescind its policy.

-13-

The relevant insurer in that case argued that the innocent third-party rule was abrogated by our Supreme Court's decision in *Titan*, 491 Mich 547. The panel disagreed, pointing out that *Titan* involved a different type of coverage—optional, excess liability coverage—rather than the mandatory PIP coverage at issue. In addition, the panel noted that *Titan* did not involve a claim for benefits by an innocent third party. In this regard, the panel explained:

> . . . In *Titan*, our Supreme Court held that an excess insurance carrier may avail itself of the equitable remedy of reformation (of contract) to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even though the fraud was easily ascertainable and the claimant is a third party, so long as the remedies are not prohibited by statute.

> [The claimed] entitlement to PIP benefits [at issue] is statutory, however, not contractual. The insurer in *Titan* did not seek to avoid payment of statutorily mandated no-fault benefits; in fact, that insurer acknowledged its liability for the minimum liability coverage limits. Nor did *Titan* address a claim for PIP benefits from an innocent third party. Thus, the holding of *Titan*, that an insurance carrier may seek reformation to avoid liability for *contractual* amounts in excess of statutory minimums, does not compel a finding that *Titan* overruled the many binding decisions of this Court applying the "innocent third-party rule" in the context of PIP benefits and an injured third party who is statutorily entitled to such benefits. [*Id*. (citations omitted).]

Because of the key differences between the issue in *Titan* and the issue involved in *State Farm*, the panel held that *Titan* did not abrogate or overrule the innocent third-party rule. *Id*. at 9-10.

## V. THE INNOCENT THIRD-PARTY RULE SURVIVES *TITAN*

I would hold that the panel in *State Farm* reached the correct result by concluding that the innocent third-party rule survives *Titan* in the context of statutorily mandated no-fault benefits, and thus, I would hold that the rule has continued validity and applies in this case. As the panel did in *State Farm*, I note that the coverage at issue in this case differs from that which was at issue in *Titan*. At issue in *Titan* was contractual liability coverage, i.e., non-statutory, optional liability coverage. In fact, statutory coverage was expressly not at issue in *Titan*, as the insurer conceded liability for the statutory minimum coverage amounts under the financial responsibility act, despite alleging that the policy was void *ab initio* because of the insured's fraud. *Titan*, 491 Mich at 552 n 2. In other words, *Titan* involved a case where the insurer sought to rescind the policy, but acknowledged it was nevertheless responsible for statutory benefits.

In contrast to *Titan*, the benefits at issue in this case, PIP benefits, are statutory. See, e.g., MCL 500.3101(1) (mandating the owner or registrant of a motor vehicle required to be registered in this state to "maintain security for payment of benefits under personal protection insurance," among other types of insurance); MCL 500.3105 (*requiring an insurer to pay PIP benefits*, subject to the provisions of the no-fault act, and providing *no other exceptions to or limitations on that requirement*); *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012); *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993). See also See *Husted v Dobbs*, 459 Mich 500, 513; 591 NW2d 642 (1999) (explaining that the compulsory

-14-

nature of statutory PIP benefits was meant to guarantee PIP coverage to accident victims in exchange for limitations on the injured person's ability to file a tort claim); *Shavers v Kelley*, 402 Mich 554, 578-579; 267 NW2d 72 (1978) (explaining that the no-fault act "was offered as an innovative social and legal response to the long payment delays" that existed in Michigan and was meant to assure "adequate, and prompt reparation for certain economic losses" through a system of compulsory insurance). As *Titan* itself states, "when a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute." *Titan*, 491 Mich at 554. The plain language of the no-fault act provides no exceptions to, or limitations on, its mandate that an insurance carrier cover certain statutorily identified no-fault PIP benefits. Cf., *id*. ("On the other hand, when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are entirely contractual and construed without reference to the statute.").

Like the panel in *State Farm*, I find the difference between the benefits at issue in this case and those contractual benefits that were at issue in *Titan* to be significant. Simply put, *Titan* did not address benefits that were required by statute; the insurer in that case expressly acknowledged liability for statutory residual liability amounts. To conclude that our Supreme Court's ruling as to purely contractual, excess liability benefits should apply and overrule approximately 30 years of this Court's precedent with regard to statutory PIP benefits is a leap I am not prepared to make. That is, I am disinclined to extend *Titan* and its reasoning to the innocent third-party rule as that rule applies to statutorily-mandated PIP benefits. I see no support for doing so in the plain language of the no-fault act. Similarly, I conclude that the innocent third-party rule is not inconsistent with the Supreme Court's decision in *Titan*. Thus, I would find that we are bound to follow this Court's precedent applying the innocent third-party rule to PIP benefits. See MCR 7.215(J)(1); *Charles A Murray Trust v Futrell*, 303 Mich App 28, 49; 840 NW2d 775 (2013) (this Court is bound to follow a prior published Court of Appeals decision issued on or after November 1, 1990 that has not been reversed or modified by our Supreme Court or a special panel of this Court).

Nonetheless, this conclusion warrants the discussion of two matters. First, the justifications posed for the innocent third-party rule have, over time, been inconsistent, and, in some cases, those justifications were premised on incorrect legal principles.[24] Yet, the innocent third-party rule has been consistently applied by this Court for over 30 years and there is an absence of published authority criticizing the rule. Thus, the rule remains good law, and this Court is bound to follow it. MCR 7.215(J)(1). And, although not serving as a basis for my decision, I would note that the innocent third-party rule serves the purposes of the no-fault act. One of the chief purposes of the no-fault act, as has been consistently identified by our courts, is

---

[24] For instance, *Wilson*, 231 Mich App at 331, justified the innocent third-party rule in a case involving PIP benefits by citing MCL 257.520(f) of the financial responsibility act. MCL 257.520(f) does not apply to PIP benefits under the no-fault act. See *Titan*, 491 Mich at 559-560. However, while MCL 257.520(f) does not apply, when the mandatory nature of PIP benefits are considered, it is not that far of a stretch to see the rationale in analogizing mandatory PIP benefits to mandatory minimum levels of liability coverage.

-15-

to ensure prompt and adequate payment for the types of injuries and losses encompassed under the category of PIP benefits. See, e.g., *Shavers*, 402 Mich at 578-579. Allowing retroactive rescission of a policy in a manner that removes coverage from an innocent individual who would ordinarily be covered under the policy thwarts the mandatory nature of these benefits and the purposes of the no-fault act.

Second, it could be argued that portions of the *Titan* opinion appear to undermine the innocent third-party rule: notably, the portions of the opinion concluding that the remedy of rescission can only be limited by statute could be said to call the innocent third-party rule into question. However, as noted above, the instant case involves an entirely different type of benefits than was at issue in *Titan*. That is, the instant matter involves mandatory PIP benefits, while *Titan* involved voluntary liability coverage above the statutorily required minimum. And, significantly, *Titan* expressly did not address mandatory benefits, given that the insurer in that case acknowledged liability for certain statutory amounts. Further, and contrary to the lead opinion's suggestions, *Titan* contained no discussion about the innocent third-party rule, and instead addressed a rule arising from this Court's jurisprudence—*Kurylowicz*—that was directly contrary to a published Supreme Court decision regarding the easily ascertainable rule. Given these significant differences between this case and *Titan*, I am not so inclined to stretch *Titan*'s holding to fit a scenario that was simply not addressed or contemplated by the Court in *Titan*. Accordingly, as did the panel in *State Farm*, unpub op at 9-10, I find *Titan* to be inapplicable to the innocent third-party rule in the context of statutorily required no-fault PIP benefits.

In declining to find that *Titan* affects the validity of the innocent third-party rule in the context of this case, I note that some of the concerns that were present in *Titan* are not present in the instant case. In *Titan*, 491 Mich at 569, the Court expressed concerns that the easily ascertainable rule "reduces disincentives for insurance fraud, and transfers legal responsibility from parties that have acted fraudulently to parties that have not." The Court reasoned that the insured, not the insurer, should bear the burden of his or her fraud by being on the hook financially for his or her third-party tort liability above the statutorily required minimum. See *Id*. But, first-party PIP benefits do not "indemnify an insured despite fraud in obtaining the insurance policy." See *Id*. The no-fault system was created so as to *eliminate* the at-fault driver's legal responsibility for medical expenses and certain wage loss and loss of service expenses, and in doing so, it also took away the injured third party's right to sue for such expenses. Instead, the no-fault system baked into all insurance contracts mandatory coverage for these expenses. Forcing an innocent third party to seek recovery for his or her PIP benefits from the assigned claims facility does nothing to "transfer responsibility" away from those who have acted fraudulently. Moreover, as our Supreme Court has recognized, "an insured often has no control over the conduct of others," and it would be untenable to require an insured to undertake to prevent others from engaging in fraud. *Morgan*, 411 Mich at 276-277. If we were to accept the invitation to extend the rule from *Titan* addressing voluntary third-party liability excess contractual coverage and conclude that the innocent third-party rule has been eliminated with respect to first-party statutory PIP benefits, we would essentially force passengers (who do not have a policy of their own), including children, to either investigate whether the car owner's insurance policy was obtained by fraud before getting into the car or risk being thrown into a firestorm investigation upon the happening of an accident in order to obtain that same information in time to make a claim to the right entity. And how would an innocent third party even go about investigating whether the policy procurer obtained the policy through fraud? That

-16-

person would already have much on his or her mind following an accident, not the least of which is attempting to recover from his or her injuries. Put simply, *Titan* impacts an insured's right to receive the protection of voluntary, excess liability coverage with respect to third-party tort claims. Its ruling and rationale do not translate to first-party PIP benefits; to do so would wreak havoc on the no-fault system and would surely lead to every injured person filing a claim with the assigned claims plan, "just in case," in addition to filing a claim with the insurance company whose policy was in effect and covered him or her at the time of the accident. I decline to extend the rationale in *Titan* to the uniquely different setting of statutorily required benefits and by doing to turn the no-fault system, as we have known it over the past thirty years, entirely on its head.

In addition, I note that in *Titan*, 491 Mich at 557, the Court rejected the easily ascertainable rule in part because the various doctrines of fraud in Michigan "do not require the party asserting fraud to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud." In short, the easily ascertainable rule had no place in the common law of fraud, and thus, could not bar rescission of an insurance policy. This type of problem is not present in the instant case, as the innocent third-party rule does not impute any additional requirements on an insurer who pleads fraud in the procurement of a policy.

Moreover, turning to the remedy of rescission, it has generally been viewed as an equitable remedy. See *Madugula v Taub*, 496 Mich 685, 712; 853 NW2d 75 (2014). It is not found in the plain language of the no-fault act, yet the Supreme Court deemed it appropriate to apply in the context of voluntary insurance coverage, which is rooted in contract rights. Similarly, the innocent third-party rule is an equitable remedy that is not found in the plain language of the no-fault act; like rescission, it too should be deemed appropriate to apply in the proper, equitable context. It is well established that the equitable remedy of rescission is not granted as a matter of right and it will not be granted when it would accomplish an inequitable result. See, e.g., *Schnitz v Grand River Avenue Dev Co*, 271 Mich 253, 257; 259 NW 900 (1935); *Johnson v QFD, Inc*, 292 Mich App 359, 375; 807 NW2d 719 (2011); *McMullen v Joldersma*, 174 Mich App 207, 219; 435 NW2d 428 (1988). Thus, the remedy of rescission carries with it the idea that the result achieved is to be an equitable one. In other words, there is room within the concept of rescission for balancing the equities, which ostensibly extends to considering the fact that an innocent third party is involved and mandatory PIP benefits are at issue. I am not convinced that it is equitable to allow an insurer to avoid paying statutorily mandated PIP benefits in a case such as this, where an innocent, injured third party, absent another's fraud, would be entitled to coverage under the policy. See *Morgan*, 411 Mich at 277. This is especially true when the no-fault act itself discusses mandatory benefits with no mention of limitations on or exceptions to that mandatory coverage.

Furthermore, I am not convinced that it is equitable to require the innocent third-party otherwise covered by a policy to seek PIP benefits through the assigned claims plan in the event the insurance carrier claims fraud by the procurer and seeks rescission, as Sentinel contends should occur in this case. As Sentinel impliedly concedes in its briefing, the payment of benefits through the assigned claims plan might be unavailable for certain innocent third parties. And I note that statutory deadlines for giving notice of claimed PIP benefits could prevent an innocent third party, through no fault of his or her own, from receiving mandatory PIP benefits. Notably,

-17-

a person claiming benefits through the assigned claims plan "shall notify" the assigned claims plan of his or her claim within one year. See MCL 500.3174[25]; MCL 500.3145(1).[26] See also *Bronson Methodist Hosp v Allstate Ins Co*, 286 Mich App 219, 225-226; 779 NW2d 304 (2009) (examining MCL 500.3145(1) and MCL 500.3174). I pose the question of: what happens when an innocent third party tries to obtain PIP benefits through the insurer listed on the policy, only to have that insurer subsequently rescind the policy based on fraud in which the innocent third party did not participate, and the innocent third party then misses the one-year deadline for notifying the assigned claims plan? At least one panel on this Court has held that, unless notice is given to the assigned claims plan within one year of the accident, the claim is barred, even when the injured person first sought benefits from what she thought was the correct insurer. See *Visner v Harris*, unpublished opinion per curiam of the Court of Appeals, issued December 6, 2012

---

[25] MCL 500.3174 points to timing deadlines in MCL 500.3145(1) and provides:

> A person claiming through the assigned claims plan shall notify the Michigan automobile insurance placement facility of his or her claim within the time that would have been allowed for filing an action for personal protection insurance benefits if identifiable coverage applicable to the claim had been in effect. The Michigan automobile insurance placement facility shall promptly assign the claim in accordance with the plan and notify the claimant of the identity and address of the insurer to which the claim is assigned. An action by the claimant shall not be commenced more than 30 days after receipt of notice of the assignment or the last date on which the action could have been commenced against an insurer of identifiable coverage applicable to the claim, whichever is later.

[26] MCL 500.3145(1) sets forth certain deadlines for commencing an action for the recovery of PIP benefits as follows:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

(Docket No. 307507).[27] This bolsters the position that permitting the remedy of rescission with regard to PIP benefits payable to innocent third parties has the potential to work an inequitable result. Moreover, allowing insurance companies to rescind their contracts with respect to PIP benefits owed to innocent third parties could encourage gamesmanship and delay tactics on the part of an insurer; insurance companies are the recipients of claims under the assigned claims plan, and waiting to rescind an insurance policy until after the assigned claims plan claim deadline passes means fewer claims filed under the assigned claims plan. This also runs afoul of the no-fault act's purpose of ensuring prompt and adequate payment for the types of injuries and losses encompassed under the category of PIP benefits. See, e.g., *Shavers*, 402 Mich at 578-579. Put simply, I do not agree that the equitable remedy of rescission trumps the equitable remedy of the innocent third-party rule such that it is appropriate to apply to first-party statutorily mandated PIP benefits, and I decline to extent *Titan* in such a fashion.

The majority opinion indicates that it "decline[s] the invitation to legislate into existence an innocent third-party rule that, thus far, the Legislature has chosen not to adopt." I first note that the equitable remedy of the innocent third party rule has been around to bar a claim for the equitable remedy of rescission with respect to PIP benefits and innocent third parties for over 30 years, yet the Legislature has felt no need to tweak the no-fault act to set this Court straight. I also note that the Legislature has never adopted the equitable remedy of rescission when it comes to the no-fault act and statutorily entitled PIP benefits. Rather, it expressly states that no-fault PIP benefits are *mandatory*. That should rule the day when it comes to statutorily rooted PIP benefits.

## VI. CONCLUSION

The differences that exist between this case and *Titan* are significant. For the reasons stated above, I would not find that *Titan* abrogates the innocent third-party rule with respect to statutory, first-party PIP benefits, and I would not cast aside 30 years of this Court's precedent on the matter.

Accordingly, I would affirm the trial court's ruling to the extent it found that the innocent third-party rule applied. However, I would hold that the trial court erred by concluding that plaintiff, as an innocent third-party, could only recover PIP benefits up to the amount mandated by MCL 257.520. As discussed above, that limitation is not applicable to this case.

/s/ Jane M. Beckering

---

[27] Although unpublished decisions such as *Visner* are not binding precedent, they may be viewed as instructive or persuasive authority. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).